UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
STEVEN GRECO,

                       Plaintiff,                      MEMORANDUM
                                                        AND ORDER

    -against-

                                                                16-CV-2196 (AMD)

BANK OF AMERICA, N.A.,

                       Defendant.
----------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

        In this diversity action to quiet title to real property, plaintiff Steven Greco ("plaintiff" or "Greco") contends that, despite defendant's possession of a note and mortgage on certain real property, he possesses absolute and unencumbered title to that property because the note and mortgage were accelerated and the relevant limitations period has since expired. Defendant Bank of America N.A. ("defendant") maintains that it properly decelerated the note and mortgage within the limitations period and, on that basis, has filed an unopposed motion for summary judgment. For the following reasons, defendant's motion is granted.

## BACKGROUND

### A. Factual History

        All facts save one are undisputed.[1] Plaintiff is the owner of real property located at 215 19th Street, Brooklyn, New York (the "property"). See Defendant's Statement of Undisputed Material Facts (Mar. 13, 2017) ("Def. 56.1 Stmt.") ¶ 1, Electronic Case Filing ("ECF")

---

[1] Though plaintiff has not opposed the instant motion, plaintiff previously submitted a counter-statement of undisputed facts in response to defendant's request for a pre-motion conference and an order from this Court. See Plaintiff's Counter Statement of Undisputed Facts (Dec. 6, 2016) ("Pl. 56.1 Stmt."), DE #17-1; see also Order (Dec. 5, 2016).

Docket Entry ("DE") #26-2.  On September 1, 2006, plaintiff executed a note in favor of Impac Funding Corporation ("Impac") in the amount of $970,000 (the "note"), secured by a mortgage on the property (the "mortgage") executed the same day in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as Impac's nominee.  See id. ¶¶ 2–3.  Plaintiff defaulted on his obligations under the note and mortgage, on or about February 1, 2008.  See id. ¶ 4.

On December 16, 2008, IndyMac Federal Bank FSB ("IndyMac")—to whom MERS, still acting as nominee for Impac, had assigned the mortgage—filed a foreclosure action against Greco (the "foreclosure action"), seeking all sums due and owing under the note and the mortgage.  See id. ¶¶ 5–6.  Greco was served on December 20, 2008.  See Supplemental Declaration of Brian J. Slipakoff (Mar. 13, 2017) ("Supp. Slipakoff Decl.") ¶¶ 4–5 & Ex. A, at 4, DE #26-8.[2]  The Federal Deposit Insurance Corporation, acting as receiver for IndyMac, subsequently assigned the mortgage to defendant, which currently possesses the original note.  See Def. 56.1 Stmt. ¶¶ 7–8.  Later, on or about September 26, 2013, Ocwen Loan Servicing, LLC ("Ocwen") began servicing the note and mortgage, acting at all subsequent times as defendant's attorney-in-fact under a limited power of attorney.  See id. ¶¶ 9–10.  In furtherance of that power, Ocwen retained the law firm of McCabe, Weisberg & Conway ("McCabe") to pursue defendant's remedies with respect to Greco's default.  See id. ¶ 11.

The foreclosure action was dismissed on December 3, 2013.  See id. ¶ 12.  Just over

---

[2] Because defendant filed the Supplemental Slipakoff Declaration and exhibit as a single document, without consecutive internal pagination, the page numbers referenced here and in subsequent citations to exhibits to declarations are to the pagination added by the ECF system.

one year later, on or around December 15, 2014, McCabe, acting on defendant's behalf, sent plaintiff a letter dated December 15th (the "12/15/14 Letter"), stating that, "[a]t this time, the lender hereby revokes it's [sic] proper election to accelerate all sums due and owing under the [September 1, 2006] loan documents."[3] Id. ¶ 14 (citing Declaration of Mark Golab (Mar. 13, 2017) ("Golab Decl.") ¶¶ 5–8 & Exs. A & B, at 4, 6, DE #26-6). Defendant has not elected to reaccelerate. See Def. 56.1 Stmt. ¶ 18.

The sole point of contention here is whether the 12/15/14 Letter was in fact mailed on that particular date. Compare Def. 56.1 Stmt. ¶ 14, with Pl. 56.1 Stmt. ¶ 14. Earlier in the litigation, plaintiff argued, citing United States Postal Service ("USPS") tracking information and claiming that the relevant envelope "appears" to be post-marked December 16, 2014, that the 12/15/14 Letter was not mailed until December 16th. See Response in Opposition re Motion for Pre Motion Conference ("12/6/16 Pl. Letter") at 1–2, DE #17; see also Pl. 56.1 Stmt. ¶¶ 14 & Ex. A, at 7, 9. Based on plaintiff's response to defendant's request for a pre-motion conference, as well as the colloquy at that conference, the Court understands plaintiff to contend that the date until which defendant could decelerate the note and mortgage was December 15, 2014; hence, according to plaintiff, defendant failed to decelerate the mortgage prior to that deadline and the mortgage is unenforceable. See, e.g., 12/6/16 Pl. Letter at 1–2;

---

[3] Ocwen was notified on December 19, 2014 that the note and mortgage and had been decelerated pursuant to the 12/15/14 Letter. See Def. 56.1 Stmt. ¶ 15. Accordingly, the first monthly statement that Ocwen sent to plaintiff after receiving notice of the deceleration reflected an amount due of $590,142.54, of which $582,682.93 constituted past due payments, whereas the monthly statement sent to plaintiff on November 17, 2014 had reflected an amount due of $1,481,003.59, of which $1,027,381.22 constituted the total unpaid principal balance due on the note. See id. ¶¶ 13, 16.

see also Memorandum of Law in Support of Motion for Summary Judgment (Mar. 13, 2017) ("Def. Mem.") at 1, DE #26-1. Defendant counters that the six-year limitations period did not begin to run until service of the summons and complaint in the foreclosure action, on December 20, 2008, and that deceleration was therefore timely even if the 12/15/14 Letter had been sent on December 16th. See id. at 6–8. Defendant also asserts, citing declarations by McCabe employees and contemporaneous records, that the 12/15/14 Letter was in any event deposited in a USPS facility on December 15, 2014, and therefore represents a timely act to decelerate the note and mortgage even under plaintiff's theory of the applicable limitations period. See Def. Mem. at 8–10 (citing Golab Decl. ¶¶ 4–6 & Ex. C, at 8–9; Affidavit of Joyce Celano (Mar. 13, 2017) ("Celano Aff.") ¶ 4, DE #26-5).

### B. Procedural History

Greco initiated this lawsuit on March 29, 2016 in state court, see Complaint (Mar. 29, 2016), DE #1-1, from which defendant thereafter removed it to this Court, see Notice of Removal (May 3, 2016), DE #1. On December 9, 2016, the parties consented to have a magistrate judge consider and enter a final order as to defendant's anticipated motion for summary judgment. See Consent to Magistrate Judge Disposition on Motion (Dec. 9, 2016), DE #18. The instant motion was filed on March 13, 2017. See Motion for Summary Judgment (Mar. 13, 2017), DE #26. Though plaintiff's opposition was due April 3, 2017, plaintiff failed to submit one, and the Court directed him, on pain of sanctions, to do so by April 7, 2017. See Electronic Order (Apr. 5, 2017). When April 7th came and went, plaintiff had yet to file any opposition, and defendant submitted a "reply" in support of its motion, asking the Court to "treat [its] motion as uncontested and enter judgment in [its] favor." Reply

(Apr. 10, 2017) at 2, DE #27.

To address plaintiff's failure to submit an opposition brief despite two separate orders, as well as plaintiff's pattern and practice of ignoring judicial directives in this case,[4] the Court conducted a telephone conference with the parties on April 12, 2017. See Minute Entry (Apr. 12, 2017), DE #28. During the conference, plaintiff's counsel, to explain his omissions, stated that his client has been uncooperative and has failed to provide an affidavit supporting an opposition to summary judgment; yet counsel failed to explain why he had not brought that issue to the Court's attention in advance of the deadlines set by the Court. See id. Counsel conceded that as a result of plaintiff's failure to submit an opposition, defendant's motion should be granted and the case dismissed. See id.

## DISCUSSION

Defendant's motion raises a fundamental question: When does the six-year limitations period in which to revoke an acceleration of a mortgage debt begin and end? Defendant contends that the limitations period at issue here began on December 20, 2008, when plaintiff was served with the summons and complaint in the foreclosure action, and expired on December 19, 2014. See Def. Mem. at 6–8. Plaintiff has argued that the limitations period

---

[4] Summary judgment is not the only stage of the proceedings at which plaintiff and his counsel have ignored this Court's orders: On no fewer than seven prior occasions, the Court admonished plaintiff for failing to comply with Court directives and delaying the resolution of this case. See Electronic Order to Show Cause (Oct. 5, 2016); Order to Show Cause (Oct. 18, 2016) ("10/18/16 OTSC"), DE #12; Electronic Order (Nov. 7, 2016); Order (Dec. 5, 2016), DE #16; Order to Show Cause (Jan. 17, 2017), DE #21; Order (Jan. 23, 2017), DE #23; Electronic Order (Feb. 10, 2017). For instance, plaintiff's refusal to provide documentation in support of a request for loan modification scuttled any possibility of settlement in this matter. See 10/18/16 OTSC; Response in Opposition re Motion to Appear by Telephone (Oct. 20, 2016), DE #14.

began to run on December 16, 2008, when the foreclosure action was filed, and expired on December 15, 2014. See 12/6/16 Pl. Letter at 2. Neither party's calculation, however, accounts for the fact that New York law requires that the date of filing (or service) be excluded from the calculation of the limitations period. Accordingly, even assuming, *arguendo*, that plaintiff's view is correct, the limitations period ended on December 16, 2014, not December 15th, and defendant's notice of deceleration was timely if it was mailed on either day. In any event, there is no genuine factual dispute that defendant mailed the notice of deceleration on December 15, 2014.

**I. Summary Judgment**

On summary judgment, the Court does not try issues of fact, but rather "determine[s] whether there *are* issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 15–16 (2d Cir. 1995). To succeed, the movant must show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law, see, e.g., Jeffreys v. The City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)), with the Court resolving all ambiguities and drawing all permissible factual inferences in favor of the nonmoving party, see, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). If the movant makes its initial showing, the burden shifts to the nonmovant to establish the existence of a genuine and material factual dispute. See George v. Reisdorf Bros., Inc., 410 F.App'x 382, 383–84 (2d Cir. 2011). In doing so, the nonmovant must sufficiently "establish the existence of [each] element essential to that party's case, . . . since a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Though failure to oppose a motion for summary judgment is a "perilous path[,]" Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004), the Court cannot "automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed[,]" Jackson v. Fed. Exp., 766 F.3d 189, 194 (2d Cir. 2014); but see id. at 197–98 (holding that when a party represented by counsel partially opposes a motion for summary judgment, the Court has discretion to conclude that its abandonment of any claims or defenses is intentional). Instead, the Court "must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production[,]" and that the movant's legal theory is "sound." Id. "In doing so, the court may rely on other evidence in the record even if uncited." Id.

## II. Mortgage Foreclosure and Acceleration

In New York, "an action to foreclose a mortgage may be brought to recover unpaid sums . . . due within the six-year period immediately preceding the commencement of the action." Wells Fargo Bank, N.A. v. Burke, 943 N.Y.S.2d 540, 542 (2d Dep't 2012) (citing N.Y. C.P.L.R. § 213[4]). When a mortgage is payable in installments, causes of action accrue separately for each unpaid installment, with distinct limitations periods beginning to run on the date that each installment becomes due. See Phoenix Acquisition Corp. v. Campcore, Inc., 81 N.Y.2d 138, 141–42 (N.Y. 1993); Burke, 943 N.Y.S.2d at 542. Nevertheless, even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount becomes due and subject to a single six-year limitations period. See Burke, 943 N.Y.S.2d at 542 (collecting cases). A lender may revoke its decision to accelerate a mortgage debt, however, by an "affirmative act of revocation" taken within the six-year limitations period subsequent to the election to accelerate. See Kashipour v. Wilmington Savings Fund Soc'y,

FSB, 41 N.Y.S.3d 738, 739 (2d Dep't 2016) (collecting cases).

### A. Defining the Limitations Period

New York courts have provided mixed guidance concerning which event signifies a mortgagee's election to accelerate a mortgage debt, thereby initiating the limitations period. The Second Department has reached varying conclusions. Compare Fannie Mae v. 133 Mgmt., LLC, 2 N.Y.S.3d 361, 361 (2d Dep't 2015) (filing of foreclosure action), with Fed. Nat'l Mortg. Ass'n v. Mebane, 618 N.Y.S.2d 88, 89–90 (2d Dep't 1994) (service of summons and complaint in foreclosure action). Federal courts in this District have similarly diverged. Compare Assets Recovery Ctr. Invs., LLC v. Smith, No. 13-CV-253 (CBA)(CLP), 2016 WL 1408096, at *2 (E.D.N.Y. Apr. 8, 2016) (filing of foreclosure action), with Home Loan Inv. Bank v. Goodness & Mercy, Inc., No. 10-CV-4677 (ADS) (ETB), 2012 WL 1078886, at *7 (E.D.N.Y. Mar. 30, 2012) (service of summons and complaint). Clearly, the law is less settled than defendant claims. Cf. Def. Mem. at 6–8 (citing, *inter alia*, Mebane, 618 N.Y.S.2d at 88–89).

Nevertheless, under New York law, "[i]n computing any specified period of time from a specified event," such as an election to accelerate a mortgage, "the day upon which the event happens is deemed the day from which the reckoning is made[,]" but that day "shall be excluded in making the reckoning." N.Y. Gen. Constr. Law § 20. Accordingly, where a right of action subject to a six-year limitations period accrued on August 30, 1941, service of a demand for arbitration thereon was deemed timely when filed on August 30, 1947. See *In re* Three Sofia Bros. Corp., 76 N.Y.S.2d 337, 338 (N.Y. Sup. Ct. 1947); see also, e.g., Noguera v. Bedard, No. 11-CV-4893 (RRM)(ALC), 2011 WL 5117598, at *2 & n.1 (E.D.N.Y. Oct. 26, 2011) (response to *ad damnum* demand due within fifteen days of October 12, 2011 was

due October 27th); JPMorgan Chase Bank v. Lowell, 765 N.Y.S.2d 315, 317 (1st Dep't 2003) (thirty-day default period that began December 1st ended on December 31st).

In this light, even under plaintiff's theory, whether defendant mailed notice of its decision to decelerate the mortgage debt on December 15th or 16th, its election was timely. Because the proper calculation of the limitations period would exclude the day that the foreclosure action was filed, the limitations period ran until December 16, 2014. See N.Y. Gen. Constr. Law § 20; Three Sofia Bros., 76 N.Y.S.2d at 338. Consequently, there can be no genuine or material dispute of fact that defendant's election was timely.

### B. Proof of Mailing

Furthermore, even if plaintiff is correct that the limitations period ended on December 15, 2014, there can be no genuine factual dispute that defendant timely mailed its notice of deceleration. "[I]t is well settled that service by mail is complete upon deposit of such papers in the mail." Dixon v. Motor Vehicle Indemnification Corp., 637 N.Y.S.2d 479, 480–81 (2d Dep't 1996) (addressing whether application for leave to commence an action was timely served by regular mail within the relevant limitations period) (citations omitted). To establish a presumption of proper mailing, a party must offer "actual proof of mailing and/or standard mailing practice[.]" Hernandez v. Merchants Mut. Ins. Co., No. 25912/02, 2006 WL 3896735, at *7 (N.Y. Sup. Ct. Dec. 6, 2006); see also Wells Fargo Bank, N.A. v. Tessler, No. 508248/13, 2016 WL 818834, at *7–8 (N.Y. Sup. Ct. Mar. 1, 2016) (considering sufficiency of affidavit concerning, *inter alia*, the date on which a notice of default was mailed); Oskar v. IDS Prop. Cas. Ins. Co., No. 09-CV-4516 (RRM)(JO), 2011 WL 1103905, at *4 (E.D.N.Y. Mar. 23, 2011) (assessing whether notice of insurance cancellation was timely mailed). Absent such proof, "factual issues remain [with regard to mailing] that must

'await determination at trial.'" Hernandez, 2006 WL 3896735, at *7 (quoting Tracy v. William Penn Life Ins. Co. of N.Y., 650 N.Y.S.2d 907, 909–10 (3d Dep't 1996)). When a party has properly established the presumption, however, conclusory denials by the purported recipient are insufficient to create a dispute of fact. See, e.g., Oskar, 2011 WL 1103905, at *4 ("[N]aked denial of receipt, without more, is inadequate to rebut the presumption once established—the [purported recipient] must also make a showing that routine office procedure was not followed or was so careless that it would be unreasonable to assume that the notice was mailed [as claimed]." (internal quotation marks and citation omitted)).

Here, defendant has furnished proof of standard mailing practice *and* actual mailing: The Celano Affidavit describes McCabe's "specialized process" for mailing deceleration letters, in effect at the time the 12/15/14 Letter was sent. Celano Aff. ¶ 3. Pursuant to these procedures, all deceleration letters sent by McCabe were "drafted in concert with the [relevant] client and the in-house . . . Statute of Limitations Coordinator" and, on completion, were "same-day desposit[ed] into a facility in care of the [USPS] located immediately outside the [McCabe] building." Id. ¶¶ 3–4. Additionally, in his declaration, Golab describes his preparation and execution of the 12/15/14 Letter, which he states, based on his personal experience and a review of McCabe's business records, was sent on December 15, 2014. See Golab Decl. ¶¶ 5–6. Attached to the Golab Declaration are copies of the envelopes in which the 12/15/14 Letter was sent to Greco, each bearing a certified mail receipt and a postmark of December 15, 2014. See id. ¶¶ 7–8 & Exs. C & D, at 9, 12.

In response, plaintiff claims that the 12/15/14 Letter appears to be postmarked December 16, 2014, and points to USPS tracking information reflecting that the USPS did not begin processing two McCabe letters addressed to plaintiff until that date. See 12/6/16 Letter

at 1.  But these rejoinders are irrelevant.  Service by mail is complete on deposit with the USPS, see Dixon, 637 N.Y.S.2d at 480–81, not when the USPS begins processing the mailing.  Similarly irrelevant is plaintiff's claim that the postmarks on certain envelopes "appear[]" to be December 16th.  See 12/6/16 Letter at 1.  Defendant has identified two envelopes, each clearly postmarked December 15th, that correspond to the certified mail receipts for the 12/15/14 Letter, see Golab Decl. ¶¶ 7–8 & Exs. C & D, at 9, 12, notwithstanding plaintiff's assertions.[5]  Ultimately, plaintiff fails to raise a genuine dispute of fact, as the record demonstrates that defendant in fact mailed the 12/15/14 Letter on December 15, 2014, rendering it timely even under plaintiff's more restrictive theory of the six-year limitations period.

## CONCLUSION

Defendant's motion for summary judgment is granted, and the complaint is dismissed with prejudice.  The Clerk of the Court is requested to enter judgment accordingly.

**SO ORDERED.**

**Dated:**      **Brooklyn, New York**
                **April 25, 2017**

/s/     *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[5]  The exhibits to the Golab Declaration contain photocopies of two different pairs of envelopes addressed to plaintiff at the property and another address.  Compare Golab Decl., Ex. C, at 8, with id. at 9.  One of these reflects postage of $0.48, see id. at 8, while the other reflects postage of $6.48, see id. at 9.  Plaintiff appears to contend that the $0.48 envelopes contained the deceleration notice, see 12/6/16 Pl. Letter at 1; Pl. 56.1 Stmt. ¶ 14, while defendant has identified the $6.48 envelopes, each clearly postmarked December 15, 2014, as the correct ones, see Golab Decl. ¶¶ 7–8 & Exs. C & D, at 9, 12.  The postage rates make clear that the $6.48 envelopes correspond to the certified mail receipts that defendant has identified as those used to send the deceleration notice.  Compare id., Ex. C, at 8, with id. at 9.  Accordingly, the postmarks on the $0.48 envelopes are irrelevant.